## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

TORIANO RICE                )
                            )
       Plaintiff,         )
                            )
      v.              )       Case No. 4:19-CV-2029 NAB
                            )
KILOLO KIJAKAZI[1],      )
Commissioner of Social Security,  )
                            )
       Defendant.      )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Toriano Rice's appeal regarding the denial of Supplemental Security Income under the Social Security Act. The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 9.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence.  Based on the following, the Court will affirm the Commissioner's decision.

### I.     Issues for Review

Rice presents two issues for review. He asserts that the administrative law judge's ("ALJ") residual functional capacity determination is not supported by substantial evidence, and that the ALJ's decision fails to properly evaluate Rice's treating physician opinion. The Commissioner asserts that the ALJ properly evaluated the medical opinions of record, and the ALJ's decision should be affirmed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.      Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled.  20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled.  20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported

by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

## III. Discussion

### A.    ALJ's Decision

The ALJ found that Rice had not engaged in substantial gainful activity since September 26, 2016, the alleged onset date. (Tr. 14.) Next, the ALJ found that Rice had the severe impairments of depression and bipolar disorder. (*Id.*) The ALJ found that Rice's obesity, diabetes mellitus, gastroesophageal reflux disease, gastritis and duodenitis, and substance addiction disorder were non-severe impairments. (*Id.*)

The ALJ determined that Rice did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 15.) The ALJ also determined that Rice had the residual functional capacity to perform a full range of work at all exertional levels, but with nonexertional limitations to include:

3

Rice is limited to understanding, remembering, and completing 1- to 2-step instructions, and can adapt to routine changes and make simple decisions on a consistent basis, and must avoid working in close proximity to available controlled substances. (Tr. 16-17.) Based on the foregoing, the ALJ found that Rice was capable of performing past relevant work as an Industrial Cleaner because that work does not require the performance of work-related activities precluded by Rice's residual functional capacity. (Tr. 20.) The ALJ also found there were other jobs in the national economy that Rice was also capable of performing, including change house attendant, salvage laborer, and counter supply worker. (Tr. 21-22.) Therefore, the ALJ ultimately concluded that Rice was not under a disability, as defined by the Social Security Act, from October 5, 2016 to November 28, 2018.

### B.      RFC Determination

Rice raises two overlapping issues on appeal. First, Rice contends that the ALJ's decision was flawed because the ALJ relied on a non-examining physician's RFC when the agency RFC assessments were made more than a year before the hearing and were not based upon the full record. Second, Rice contends that the ALJ's decision fails to give Dr. Kisker's opinion the controlling weight to which it is entitled because Dr. Kisker is Rice's treating physician. In response, Defendant argues that the ALJ properly evaluated each physician's medical opinions, and the RFC is supported by substantial evidence.

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[2] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's

---

[2] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  SSR 96-8p, 1996 WL 374184, at *1.

4

responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907. It is the claimant's burden to establish his RFC. *Masterson,* 363 F.3d at 737. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There is no requirement, however, that an RFC finding be supported by a specific medical opinion.  *Id.*

The ALJ has the role of resolving conflicts among the opinions of various treating and examining physicians. *Pearsall,* 274 F.3d at 1219. The ALJ may reject the conclusions of any medical expert, whether hired by the government or the claimant, if they are inconsistent with the record as a whole. *Id.* Normally, the opinion of the treating physician is entitled to substantial weight. *Casey v. Astrue,* 503 F.3d 687, 691 (8th Cir. 2007). The opinion of a consulting physician, who examines a claimant once, or not at all, generally receives very little weight. *Singh v. Apfel,* 222 F.3d 448, 452 (8th Cir. 2000).

Still, the opinion of the treating physician is not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data. *Casey,* 503 F.3d at 691. The ALJ may credit other medical evaluations over the opinion of a treating physician if the other assessments are supported by better or more thorough medical evidence, or when the treating physician's opinions are internally inconsistent. *Guilliams,* 393 F.3d 798, 803 (8th Cir. 2005); *Cantrell v. Apfel,* 231 F.3d 1104, 1107 (8th Cir. 2000). In determining how much weight to give a treating physician's opinion, the ALJ must consider the length of the treatment relationship and the frequency of examinations. *Casey,* 503 F.3d at 692.

In this case, the ALJ weighed four opinions. The ALJ gave the opinions of Rice's psychological consultative examiner, Paul Rexroat, Ph.D., significant weight. (Tr. 19.) Dr. Rexroat examined Rice on March 6, 2017, and opined that Rice is able to understand and remember simple instruction as well as sustain concentration, persistence, and pace with simple tasks. The ALJ gave the opinion of the non-examining State agency psychological consultant, Steven Akeson, Psy.D., great weight. (Tr. 19.) Dr. Akeson reviewed Rice's records and on March 21, 2017, opined that Rice could understand, remember, and complete one to two step instructions, adapt to routine changes, and make simple decisions on a consistent basis. The ALJ gave the third party function report filled out by Rice's live-in girlfriend, Shirley Herron, partial weight. (Tr. 20.) Ms. Herron reported that Rice struggles with his concentration and that he has limitations as to his memory, understanding, and following instructions, but also that he is capable of paying attention for a long time. She then reported that he does not spend time with others, but also reported that he attends social groups twice a month.

Rice argues that the RFC adopted by the ALJ is word for word the above-referenced opinion of Dr. Akeson rendered on March 21, 2017, nearly 18 months before the September 12, 2018 hearing. Rice argues the ALJ's use of Dr. Akeson's RFC cannot be considered "substantial evidence" because it is based on the opinion of a non-examining, consulting physician. (Doc. 23 at 3 (citing *Harvey v. Barnhart,* 368 F.3d 1013, 1016 (8th Cir. 2004)). Rice points out that Dr. Akeson was only able to review the records of Rice's September 2016 admission to St. Mary's Hospital, the consultative exam performed by Dr. Rexroat on March 6, 2017, and the third party function reports completed by Rice and his girlfriend, Ms. Herron.

Opinions of non-examining sources are generally given less weight than those of examining sources. *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010). When evaluating the

non-examining sources opinion, the ALJ should evaluate the degree to which the opinion considers all of the pertinent evidence in the claim, including the opinions of treating and other examining sources. *Id.* "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003).

The ALJ gave Dr. Akeson's opinion considerable weight because his opinion was consistent with Rice's capabilities during his psychological consultative examination and the "overwhelming examples" of Rice being cooperative and participating in his group therapy as well as socialization throughout the record. (Tr. 19, 266, 278, 281, 282, 285, 286, 287, 289, 292, 296, 388, 389, 444, 461, 477, 502, 515.) Rice argues Dr. Akeson's opinion cannot be relied upon because he is a non-examining physician who reviewed records in March 2017, a year and a half prior to the September 2018 hearing. The Court agrees that Dr. Akeson's evaluation was not comprehensive, as the record reflects treatment throughout 2018 that could not have been taken into account by Dr. Akeson in 2017. But, an evaluation of Dr. Akeson's opinion with all of the evidence, before and after his evaluation, supports Dr. Akeson's and the ALJ's ultimate conclusion: that Rice has the residual functional capacity to perform a full range of work with non-exertional limitations including that he is limited to understanding, remembering, and completing 1 to 2-step instructions, can adapt to routine changes in and make simple decisions on a consistent basis, and that he must avoid working in close proximity to available controlled substances. (Tr. 16-17.) Therefore, there was no error in granting considerable weight to Dr. Akeson's opinion.

The fourth opinion weighed by the ALJ was that of Steven Kisker, M.D. The ALJ discounted the opinions of Dr. Kisker, giving them little weight. (Tr. 19.) In doing so, the ALJ

noted that Dr. Kisker opined that Rice had marked limitation[3] in his ability to maintain social functioning and to maintain concentration, persistence, or pace, but that the record shows routine ability to be cooperative and partake in social functioning. (Tr. 19, citing Exhibits 1F 1, 13, 16, 17, 20, 21, 22, 24, 27, 29, 31; 5F 2; 8F 18, 35, 51, 76, 89.) In fact, during Rice's May 22, 2018 encounter with Dr. Kisker, Dr. Kisker documented that Rice was well groomed, cooperative, used linear thought form, and had fair concentration, insight, and judgment. (Tr. 515.) Other providers observed Rice socializing with other patients on multiple occasions, participating in group, interacting with his peers, and following staff directions when he was admitted to the hospital. (Tr. 281, 286, 289, 292.)

Notably, Dr. Kisker's opinions also came in the form of checked boxes and were based on a treating relationship of less than four months wherein Dr. Kisker saw Rice only two or three times.[4] Furthermore, when the questionnaire asked for any additional comments that bear on the patient's capacity for performing work activities, Dr. Kisker left the question blank, declining the opportunity to provide any commentary or explanation for his opinion. (Tr. 568.) Under these circumstances, the undersigned finds that the ALJ appropriately considered Dr. Kisker's opinions. *See Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007) ("In considering how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations"); *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (discounting RFC assessment of treating physicians because they were in checklist form, were

---

[3] The ALJ incorrectly states that Dr. Kisker's General Medical Source Statement questionnaire opines that Rice had marked limitation in his ability to maintain social functioning and to maintain concentration, persistence, or pace, when Dr. Kisker's questionnaire gives an opinion of **extreme** limitation, not marked limitation, rendering Dr. Kisker's opinion even more inconsistent with what is reflected in the record. (Tr. 568.)

[4] Dr. Kisker's questionnaire indicates that he treated Rice from May 22, 2018 to September 4, 2018. The record reflects encounters with Dr. Kisker on May 22, 2018 and July 25, 2018. (Tr. 510-526.) Dr. Kisker's questionnaire states the patient was last seen on September 4, 2018, but the record does not contain medical records for said encounter. (Tr. 566.)

based on relatively short-term relationships with claimant, and were inconsistent with the medical evidence as a whole); *Prosch v. Apfel,* 201 F.3d 1010, 1014 (8th Cir. 2000) ("An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence").

Rice also emphasizes that Dr. Kisker and other providers saw Rice *after* Dr. Rexroat's March 6, 2017 consultative exam, and Rice criticizes the ALJ's lack of discussion of how subsequent mental status exams documenting depressed mood, flat affect, auditory hallucinations, and other issues affected Rice's RFC.  However, "an ALJ is not required to discuss every piece of evidence submitted," and "an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (internal quotations omitted). Moreover, the ALJ recognized that Rice has routinely seen a psychiatrist since late 2016, and Rice testified that his recent change in medication allowed him to get more sleep and end his audible hallucinations. (Tr. 18, 44-45.)

Additionally, Rice's argument is based on the proposition that the state agency doctors' assessments of March 2017 "remain the same a year and a half later despite significant treatment and opinion to the contrary." (Doc. 23 at 7.) Rice ignores that consultative examiner Dr. Rexroat examined Rice a second time on April 2, 2018. (Tr. 536.) A comparison of Dr. Rexroat's March 6, 2017 and April 2, 2018 reports indicates improvement, not deterioration, in Rice's mental status exam and cognitive functioning. For example, in March 2017, Rice was slightly anxious and slightly tense and cried at times during the exam, exhibiting a moderately restricted range of emotional responsiveness and a flat affect. During the April 2018 exam, Rice was not suspicious, anxious, tense, or weepy. He exhibited a mildly restricted range of emotional responsiveness and only a "slightly" flat affect. (*Compare* Tr. 388 *and* 534.) Rice's memory for events in his past went

from "fair" in 2017 to "good" in 2018. His immediate memory as measured by digit span increased from four digits forward and three digits backward in 2017 to six digits forward and four digits backward in 2018. Regarding his remote memory in 2017, Rice could not recall what he ate for dinner the night before. During the 2018 exam, Rice was able to recall and identify to Dr. Rexroat his meal from the evening prior. (*Compare* Tr. 389 *and* 535-536.) Dr. Rexroat's opinion regarding Rice's ability to interact socially went from a moderate limitation in this area in 2017 to a mild limitation based on the 2018 exam. Dr. Rexroat originally opined that Rice had moderate limitations in his social functioning in 2017, but this area improved to a mild limitation based on the 2018 exam. The Court finds that Dr. Rexroat's opinions are consistent with his assessments and the observations of Rice's concentration and judgment throughout the record. The Court finds no err in the ALJ's decision to grant significant weight to this opinion.

Overall, even if the ALJ's RFC mirrors the RFC in the opinion of a non-examining source, the other evidence and treatment records still provide substantial evidence to support the ALJ's decision. Based on the foregoing, the Court finds that substantial evidence supports the RFC determination and the ALJ's decision as to disability.

## IV. Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable mind would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because

the court would have decided the case differently. *Id.* Substantial evidence supports the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. (Docs. 1, 23.)

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of September, 2021.